IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THOMAS KIM,<br>　　Petitioner, | ) | |
| | ) | |
| | ) | |
| 　　　　v. | ) | Case No. 1:14cv1637 |
| | ) | |
| DIRECTOR, VIRGINIA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| 　　Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

Petitioner Thomas Kim, a state inmate who pled guilty to (i) abduction with the intent to

defile, in violation of Va. Code § 18.2-48, (ii) forcible sodomy, in violation of Va. Code § 18.2-

67.1, and (iii) use of a firearm during the commission of sodomy, in violation of Va. Code §

18.2-53.1, has filed a motion, by counsel, for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, based on a claim of ineffective assistance of counsel. Specifically, petitioner contends that

his trial counsel was ineffective in failing to inform petitioner prior to his plea that at the end of

his sentence, he would be subject to a "re-sentencing" process labeled the Sexually Violent

Predator Commitment Program, which carried a strong likelihood of, in petitioner's words, a "de

facto life sentence."[1]

The petition was filed on December 12, 2014. On March 18, 2015, respondent filed a

motion to dismiss and a Rule 5 answer. As the parties have fully briefed the issues presented and

---

[1] Habeas Corpus Petition at 1.

neither oral argument nor an evidentiary hearing would aid the decisional process, petitioner's motion is ripe for disposition.[2]  For the reasons that follow, petitioner's motion must be denied.

I.[3]

A brief summary of the factual and procedural history of the case places petitioner's motion in context.  Thus, the record reflects that on October 11, 2011, petitioner approached a Hispanic female, displayed a badge and handgun, and informed this female that he was an F.B.I. agent looking for "Maria."  After querying the female ("R.N.") about her status in the United States and finding that she did not have identification, petitioner fondled her breasts and, after placing R.N. in his car, inserted his hand into her underwear.  When R.N. attempted to exit the vehicle, petitioner threatened to handcuff her.  He then drove her to another location, forced her to perform oral sex on him, and ordered her out of the car when he was finished.  R.N. reported this incident to the police.  Earlier that same day, petitioner had approached another Hispanic female teenager, once again flashing a badge and displaying a gun under the guise of being a police officer who needed to see the teenager's identification.  When the teenager ignored petitioner's request and continued walking, petitioner fondled her breasts outside her home and then left.

Thereafter, on October 14, 2011, petitioner approached a different Hispanic teenager and again displayed a badge, asking the teenager if she knew where "Maria Lopez" lived.  Although petitioner drove away on account of traffic, this teenager reported petitioner's description and

---

[2] Although petitioner requests an evidentiary hearing with respect to his claim, when, as here, "the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1399 (2011) (internal quotation marks and citations omitted).

[3] The facts recited here are derived chiefly from the transcript of petitioner's plea proceedings in Fairfax County Circuit Court.

license plate number to the police. On the basis of this information, police identified petitioner as the vehicle owner and then showed petitioner's picture to R.N., who identified petitioner as the individual who had abducted and sexually assaulted her.

On October 24, 2011, police had petitioner under surveillance when he approached yet another Hispanic woman, but this woman walked away from him. Petitioner then proceeded to follow a different Hispanic woman into her apartment building. The police officers surveilling petitioner followed petitioner and the woman up to her apartment and then asked the woman to leave. Petitioner was briefly inside the apartment with the door shut, but exited with a gun on his hip and a condom in his pocket. He was then arrested. The woman told police that petitioner had shown her a badge, had identified himself as a law enforcement officer, and accompanied her to her apartment to inspect her identification documents. When taken into custody, petitioner admitted to being in the relevant locations and further admitted to looking for a "Lopez family" that owed him money, but he denied ever carrying a badge. Physical evidence undermined petitioner's denial, however, as several weeks later, the final victim found a badge containing petitioner's DNA under a mattress in her apartment.

On March 19, 2012, a Fairfax County grand jury returned a three-count indictment charging petitioner with abduction with the intent to defile in violation of Va. Code § 18.2-48 (Count I), forcible sodomy in violation of Va. Code § 18.2-67.1 (Count II), and use of a firearm during the commission of sodomy in violation of Va. Code § 18.2-53.1 (Count III). After conferring with counsel, petitioner pled guilty to all three counts based on the October 11, 2011 incident with R.N. In exchange, the Commonwealth agreed not to pursue charges for the other October 11, 2011 incident or the October 24, 2011 incidents.

Petitioner entered his plea of guilty on May 9, 2012, in the course of which the Fairfax

County Circuit Judge advised petitioner of the possible consequences of his felony conviction as

follows:

> THE COURT:  As a United States citizen these felony convictions can negatively
> affect your citizenship.  Certainly citizenship can't be taken away from you, but it
> can have a negative impact because there are certain civil consequences to felony
> convictions.  I'm going to go through a few of those.
>
> Those variety of consequences may include but would not be limited to possible
> civil commitment, possible civil forfeiture, certainly loss of your right to vote
> because these are felonies . . .
>
> Do you understand that these are some additional civil consequences that can
> result from pleas of guilty to these offenses?
>
> THE DEFENDANT:  Yes, your honor.

Thereafter, the Fairfax County Circuit Judge continued the case for sentencing on September 7,

2012.  Attorney Robert Whitestone represented petitioner through sentencing.

After hearing evidence and argument from both sides, the Fairfax County Circuit Judge

sentenced petitioner to life in prison for Count I, 20 years in prison for Count II, to be served

concurrently with the sentence imposed on Count I, and 3 years in prison for Count III, to be

served consecutively to the sentences imposed on Counts I and II.[4]  The Fairfax County Circuit

Judge then proceeded to suspend all but 24 years and 6 months of the sentence on Count I,

subject to the following conditions: (i) good behavior, (ii) supervised probation, (iii) costs, (iv)

restitution, and (v) credit for time served.[5]  Thus, petitioner was ultimately sentenced to serve an

aggregate sentence of 27 years and 6 months.  Furthermore, pursuant to Va. Code § 9.1-903,

petitioner was ordered to register with the Department of State Police within 3 days of his release

------------------

[4] *See* Sentencing Order at 2.

[5] *See id.*

4

from confinement in a state or local correctional facility, so that this registration could be maintained in the Sex Offender Registry established by Va. Code § 9.1-900.[6]

Both the forcible sodomy and the abduction with intent to defile convictions rendered petitioner eligible to be deemed a "sexually violent predator" under Virginia Code § 37.2-900, which provides in pertinent part that:

> "Sexually violent predator" [hereinafter "SVP"] means any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial . . . and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predator behavior, which makes him likely to engage in sexually violent acts.

Importantly, Virginia law provides a number of rigorous procedures that must be followed before a court may conclude that an individual is an SVP. First, "[u]pon the filing of a petition alleging that the respondent is a[n] [SVP], the circuit court shall . . . schedule a hearing within 90 days to determine whether probable cause exists to believe that the respondent is a[n] [SVP]." Va. Code § 37.2-906(A). And at "any hearing under this section, the judge shall ascertain if the respondent is represented by counsel and, if he is not represented by counsel, the judge shall appoint an attorney to represent him." Va. Code § 37.2-906(C). If the judge finds probable cause, the judge must then conduct a hearing to determine whether the respondent is an SVP "[w]ithin 120 days after the completion of the probable cause hearing." Va. Code § 37.2-908(A). At this hearing, the "respondent shall have the right to a trial by jury. Seven persons from a panel of 13 shall constitute a jury in such cases. If a jury determines that the respondent is a[n] [SVP], a unanimous verdict shall be required. If no demand is made by either party for a trial by jury, the trial shall be before the court." Va. Code § 37.2-908(B). And the Commonwealth must clear a high bar in order for an individual to be labeled an SVP, inasmuch

---

[6] *See id.*

as "[t]he court or jury shall determine whether, by clear and convincing evidence, the respondent is a[n] [SVP]." Va. Code § 37.2-908(C). Importantly, and particularly pertinent to this case, if a court or jury determines that an individual is an SVP, then that individual "shall be committed" or be placed in "involuntary secure inpatient treatment." Va. Code § 37.2-908(D). The length of the commitment is "until such time as the respondent's mental abnormality or personality disorder has so changed that the respondent will not present an undue risk to public safety." Va. Code § 37.2-909(A). Petitioner contends that counsel was ineffective for failing to advise him of the possibility of civil commitment as an SVP.

Following sentencing, petitioner retained an attorney, Crystal Meleen, to file a motion for reconsideration, which the Fairfax County Circuit Court denied. Petitioner then filed a timely petition for writ of habeas corpus in the same court, attacking the validity of his conviction based on the same ground he is asserting in the instant petition, namely that "he received ineffective assistance of counsel because his counsel did not advise him that he might face civil commitment as a sex offender after his release from prison." *Kim v. Dir., Va. Dep't of Corrections*, No. 2013-14292 at 2 (Va. Cir. Ct. Jan. 31, 2014). The Fairfax County Circuit Court denied this motion without an evidentiary hearing, finding that "[p]etitioner's claim is belied by his plea colloquy, in which the Court highlighted civil commitment as a possible consequence of his guilty plea and Petitioner confirmed that he understood." *Id.* at 4. Moreover, the Fairfax County Circuit Court alternatively found that "even if counsel had not informed [p]etitioner of possible civil commitment, he would not have performed unreasonably because he was not required to do so. A guilty plea is not invalid for failure to advise a defendant of the possible future consequence of civil commitment." *Id.* at 5.

6

Petitioner then appealed the Fairfax County Circuit Court's decision to the Supreme Court of Virginia on April 25, 2014. The Supreme Court of Virginia also denied the petition on September 22, 2014. Subsequent to this denial, petitioner filed a motion for rehearing, which the Supreme Court of Virginia also denied on November 7, 2014. Thereafter, petitioner, by counsel, timely filed the instant petition.

## II.

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or is based on an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is (i) "contrary to" or (ii) "an unreasonable application of" federal law is based on an independent review of each standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. Under the "unreasonable application" clause, the writ should be granted only if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Importantly, this standard of reasonableness is an objective one. *Id.* at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts the presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S.

7

231, 240 (2005) (internal quotation marks and citations omitted).  In other words, this standard "'is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Jones v. Clarke*, No. 14-6590, 2015 WL 1812952 at \*2 (4th Cir. Apr. 22, 2015) (citing *Cullen*, 131 S.Ct. at 1398).  The state court "must be granted a deference and latitude that are not in operation when the case involves review under the [applicable] standard itself." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

In sum, under § 2254(d), federal habeas review of a state court decision granting or denying habeas relief focuses, with some deference, on the reasons and rationale of the state court decision.  Here, because the Supreme Court of Virginia was silent as to its rationale for affirming the Fairfax County Circuit Court's (hereinafter "State Court") decision denying petitioner's request for a writ of habeas corpus, the focus of federal review properly shifts to the reasons and rationale of the State Court decision.  This is so, as the Supreme Court has instructed, because where, as here, "there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### III.

As the State Court correctly recognized, the merits of petitioner's claim of ineffective assistance of counsel are governed by the settled and familiar two-pronged legal analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984).  Specifically, to prevail on a claim of ineffective assistance of counsel, petitioner must show first, that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  Importantly, judicial review of counsel's performance in this context is "highly deferential." *Id.* at 689.  Indeed, to establish that

8

counsel's performance was objectively unreasonable, petitioner must overcome a strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. If petitioner demonstrates that counsel's performance was objectively unreasonable, *Strickland* next requires petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 687. Thus, in step two of the *Strickland* analysis, petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Therefore, the focus of review here is whether the State Court's "application of the *Strickland* standard was unreasonable." *Jones*, 2015 WL 1812952 at *3.

## IV.

Petitioner contends that the State Court's application of the *Strickland* performance prong was unreasonable in light of the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Because the crux of petitioner's claim is based on *Padilla*, a close examination of that case is necessary.

In *Padilla*, the Supreme Court upheld the petitioner's claim that his counsel's performance was ineffective for failing to advise petitioner of the consequence of "automatic deportation" upon petitioner's guilty plea. *Id.* at 360. In reaching this result, the Supreme Court majority (7-2) relied chiefly on the fact that "[u]nder contemporary law, if a noncitizen has

9

committed a removable offense . . . his removal is *practically inevitable* but for the possible

exercise of limited remnants of equitable discretion vested in the Attorney General . . . ." *Id.* at

363-64 (emphasis added). The Supreme Court majority further noted that the Supreme Court has

"never applied a distinction between direct and collateral consequences to define the scope of

constitutionally reasonable professional assistance required under *Strickland*" but significantly,

did not resolve the question of whether that distinction was appropriate in a context other than

"the unique nature of deportation." *Id.* at 365. Because deportation was "nearly an automatic

result" for a large class of offenses, including the offense at issue, the Supreme Court concluded

that the failure to disclose this consequence constituted ineffective performance under *Strickland.*

*Id.* at 366-67.

Petitioner argues that the Supreme Court's holding in *Padilla* renders the State Court's

decision in his case unreasonable and contrary to clearly established federal law. This argument

fails; *Padilla* is significantly and substantially distinguishable from this case, as the possibility of

civil commitment upon being deemed an SVP under Virginia law is far from practically

inevitable or largely automatic. To the contrary, as petitioner concedes, unlike removal or

deportation, multiple prerequisites exist for petitioner to be labeled an SVP under Virginia law,

including a probable cause hearing in which petitioner would be entitled to counsel[7] and a

commitment hearing in which petitioner would be entitled to a trial by jury.[8]  In sum, *Padilla* is

---

[7] *See* Va. Code § 37.2-906(C) ("Prior to any hearing under this section, the judge shall ascertain if the respondent is represented by counsel, and, if he is not represented by counsel, the judge shall appoint an attorney to represent him.").

[8] *See* Va. Code § 37.2-908(B) ("[T]he respondent shall have the right to a trial by jury . . . If a jury determines that the respondent is a[n] [SVP], a unanimous verdict shall be required.  If no demand is made by either party for a trial by jury, the trial shall be before the Court.")

inapposite chiefly because unlike deportation in that case, which was "nearly an automatic result," being labeled an SVP under Virginia law is far from automatic. *Padilla*, 559 U.S. at 366.

Moreover, there is a sound basis to conclude that *Padilla* did not disturb the well-settled principle that "counsel has a constitutional duty to inform his client of direct consequences of his guilty plea; but if a consequence is merely collateral to a plea of guilty—in other words, if it is an incidental or loosely related result of the plea—counsel has no duty to mention it." *United States v. Reaves*, 695 F.3d 637, 640 (7th Cir. 2012). This is so because "[a]lthough the Supreme Court declined to apply this [collateral versus direct consequences] distinction to deportation in *Padilla*, it was also careful to note that it *would not answer* whether the distinction was an appropriate one for other ineffective assistance of counsel claims." *Id.* (emphasis added). And "[i]ndeed, *Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only." *Id.* Thus, there is no Supreme Court precedent rejecting the application of the direct/collateral consequences dichotomy in the context of ineffective assistance of counsel claims arising outside of the context of deportation.

Indeed, the reasonableness of the State Court's interpretation of federal law on this subject finds firm support in a number of cases in the Fifth Amendment context, including the Second Circuit's decision in *United States v. Youngs*, 687 F.3d 56 (2d Cir. 2012).[9] There, the

---

[9] *See also Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004) ("We believe that the possibility of commitment for life as a sexually dangerous person is a collateral consequence of pleading guilty."); *George v. Black*, 732 F.2d 108, 111 (8th Cir. 1984) (finding that possibility of civil commitment was a collateral consequence because "civil commitment does not flow automatically from the plea"); *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1365, 1366 (4th Cir. 1973) ("[T]he fact that the acceptance of the petitioner's plea of guilty . . . placed him in a class, where he *might*, as a result of the judgment in an entirely separate *civil* proceeding, in which he would be afforded counsel and all due process rights . . . be committed . . . was . . . a collateral consequence of his plea . . . ."). At least one Virginia state court decision has also concluded that counsel has no duty to disclose the possibility of commitment as an SVP under Virginia law. *See Ames v. Johnson*, No. CL04-413, 2005 WL 820305 at *3 (Va. Cir. Ct. 2005):

defendant argued that "his plea was defective because the district court did not advise him of the possibility of civil commitment as a sexually dangerous person at the end of his prison term." *Id.* at 58. The defendant's contention rested, like the petition at issue here, in large measure on *Padilla.* Like the case at bar, the Second Circuit placed principal emphasis on the fact that the Supreme Court's analysis focused on the reality that deportation or removal was "virtually inevitable" upon conviction. *Id.* at 61 (citing *Padilla*, 559 U.S. at 360). The Second Circuit thus concluded that the "concerns expressed by the Supreme Court in *Padilla* as to deportation . . . do not apply to such a remote and uncertain consequence as civil commitment" especially because the Supreme Court in *Padilla* pointed out that the *only* way for convicted defendants to avoid deportation was the "possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id.* at 62 (citing *Padilla*, 559 U.S. at 364). Thus, "deportation under these circumstances is nearly automatic." *Id.* at 63. By contrast, "future civil commitment . . . is not nearly as certain." *Id.* In underscoring the relative unpredictability of future civil commitment, the Second Circuit attached particular importance to the fact that "for civil commitment . . . the Government will still have to establish by clear and convincing evidence that the inmate suffers from a condition that will make him sexually dangerous to others." *Id.*[10]

---

> Although eligibility for civil commitment under the SVPA [Sexually Violent Predators Act] is triggered by conviction of a "sexually violent crime," civil commitment can be imposed only after testing, evaluation, a probable cause hearing, and a jury trial. No one can be civilly committed as a "sexually violent predator," unless the Commonwealth meets its burden of proof on a multitude of factors . . . [c]ivil commitment under the SVPA would be, at best, a remote collateral consequence of the . . . plea.

*Youngs* and *Reaves* undermine petitioner's claim that the State Court's decision was an unreasonable application of federal law, as the outcome in *Padilla* was based largely on the fact that deportation was almost inevitable, absent an exercise of discretion by the Attorney General. *See Padilla*, 559 U.S. at 364.  By contrast, civil commitment as an SVP under Virginia law is far from certain, as classification as an SVP requires (i) a probable cause hearing, in which it must be determined that probable cause exists to label the individual an SVP; *and* (ii) a commitment hearing, in which the Commonwealth must prove by clear and convincing evidence that the respondent is an SVP.[11]  The Eleventh Circuit's decision in *Bauder v. Dep't of Corr. State of Fla.*, 619 F.3d 1272 (11th Cir. 2010) does not compel a contrary result.  There, the petition at issue alleged that "counsel provided ineffective assistance of counsel by affirmatively telling him that pleading no contest to aggravated stalking would *not* subject him to civil commitment." *Id.* at 1273 (emphasis added).  The Eleventh Circuit found that because "counsel told Bauder that pleading to the criminal charge would *not* subject Bauder to civil commitment," this "constituted

---

[10] *Youngs* arose in the context of a district court's Fifth Amendment disclosure obligations to a defendant in the course of a plea colloquy, instead of an attorney's Sixth Amendment disclosure obligations to his or her client.  It is true that the "Sixth Amendment responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the responsibilities of a court under the Fifth Amendment." *Youngs*, 687 F.3d at 62.  Nonetheless, the analysis in *Youngs* as to whether the possibility of civil commitment needs to be disclosed by an attorney in light of *Padilla* is still applicable, because the standard for disclosure of plea-related consequences articulated in *Youngs* is consistent both with the Supreme Court's decision in *Padilla* and the standard for whether counsel has a Sixth Amendment disclosure obligation of collateral consequences. *Compare Youngs*, 687 F.3d at 60 ("Civil commitment under the Act is not definite, immediate, and largely automatic.") (internal quotation marks and citations omitted) *with Munday v. Lampert*, 215 F. App'x 593, 595 (9th Cir. 2006) ("Counsel's failure to advise a defendant of the collateral consequences of his plea . . . does not amount to ineffective assistance . . . [t]he distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.") (internal quotation marks and citations omitted).

[11] *See* Va. Code § 37.2-908(C) ("The court or jury shall determine whether, by clear and convincing evidence, the respondent is a[n] [SVP].").

affirmative misadvice." *Id.* at 1275. Critically, however, the Eleventh Circuit held that the district court did not clearly err in finding that "counsel misadvised Bauder on the *collateral consequence* of civil commitment stemming from his plea" and thus, the holding in *Bauder* stemmed from the fact that counsel tendered affirmative misadvice. *Id.* at 1274 (emphasis added).[12] More importantly, *Bauder* is not Supreme Court precedent, and "it is Supreme Court precedent . . . to which we look in applying the AEDPA standard of review." *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008). And to the extent *Bauder* creates disagreement on the correctness of the State Court's decision, such disagreement still fails to meet the requirements imposed by § 2254, as a "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks and citations omitted). In summary, where, as here, no Supreme Court precedent establishes that the possibility of civil commitment is a plea-related consequence an attorney must disclose and where, as here, some circuits have concluded, in the Fifth Amendment context, that disclosure of the possibility of civil commitment is not required, it is proper to conclude that the State Court's decision was a reasonable application and construction of *Padilla* and *Strickland*.[13] And because petitioner has

---

[12] The Supreme Court in *Padilla* expressed some disapproval towards delineating an attorney's obligations by distinguishing affirmative misadvice from nondisclosure, although this too was apparently driven, in large measure, by the unique characteristics of deportation. *See Padilla*, 559 U.S. at 370-71 ("[Such a holding] would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available.").

[13] Petitioner cites empirical data in support of his claim that the possibility of civil commitment as an SVP is as certain as deportation. An examination of this data belies petitioner's claim; indeed, the data petitioner cites demonstrates that commitment as an SVP is far from guaranteed, as between 2003 and 2010, SVP petitions were filed for 60 percent of those individuals eligible for civil commitment, and those petitions were successful 89 percent of the time. Habeas Corpus Petition at 15-16. In other words, the empirical data shows that just over half of the individuals

Case 1:14-cv-01637-TSE-MSN   Document 11   Filed 04/30/15   Page 15 of 17 PageID# 103


failed to show that the State Court's application of the *Strickland* performance prong was unreasonable, this, by itself, compels dismissal of petitioner's § 2254 motion.

V.

In denying petitioner's motion for habeas relief, the State Court alternatively relied on its conclusion that because petitioner was advised by the Court that civil commitment was a possible consequence of pleading guilty, petitioner could not show prejudice under *Strickland*. Given the result reached in Part IV, *supra*, it is unnecessary to resolve the reasonableness of the State Court's analysis on this point, but certain aspects of this analysis nonetheless merit mention. Prejudice under *Strickland* requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," namely that petitioner would not have pled guilty upon learning of the possibility of civil commitment. *Strickland*, 466 U.S. at 694. It is worth noting that some courts have found that defendants cannot prevail on the prejudice prong "if the information given by the court . . . corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice . . . ." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (internal quotation marks and citations omitted). In these circumstances, the Fourth Circuit noted that the defendant "was clearly not prejudiced by any misstatements made by his attorney." *Id.*[14]

---

eligible for SVP status were civilly committed, a figure that hardly shows that commitment as an SVP is a foregone conclusion.

[14] *See also United States v. Hernandez-Monreal*, 404 F. App'x 714, 715 (4th Cir. 2010) (finding that defendant's ineffective assistance of counsel claim predicated on counsel's failure to advise defendant of the consequence of deportation failed to show prejudice because the defendant "affirmatively acknowledged his understanding that his plea could definitely make it difficult, if

More recently, however, the Fourth Circuit reached a somewhat different result in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012). There, a defendant was given "*affirmative misadvice*" that deportation was not a possible consequence of pleading guilty. *Id.* at 253 (emphasis added). The district court, during the plea colloquy, then proceeded to mention deportation as one of many possible consequences of pleading guilty, which the defendant confirmed he understood. *Id.* at 250. The Fourth Circuit found that, in these circumstances, counsel's affirmative misadvice prejudiced the defendant under *Strickland*. In reaching this conclusion, the Fourth Circuit distinguished *Foster* by holding that the "general and equivocal admonishment" by the district court was "insufficient to correct counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense." *Id.* at 254.

Here, the State Court found that petitioner's claim of prejudice was "belied by his plea colloquy, in which the Court highlighted potential civil commitment as a possible consequence of his guilty plea and [p]etitioner confirmed that he understood." *Kim*, No. 2013-14292 at 4. Yet, given that *Akinsade* and *Foster* are arguably in some tension on this issue and because the result reached with respect to the State Court's analysis of the *Strickland* performance prong is dispositive, it is unnecessary to reach or decide the reasonableness of the State Court's analysis of the *Strickland* prejudice prong.

## VI.

In sum, because the State Court's conclusion that counsel's failure to disclose the possibility of civil commitment did not constitute ineffective assistance of counsel was neither contrary to nor an unreasonable application of clearly established Federal law with respect to the

---

not impossible, for [him] to successfully stay legally in the United States") (internal quotation marks and citations omitted).

*Strickland* performance prong, respondent's motion to dismiss must be granted and this petition must be dismissed.

An appropriate Judgment and Order will issue.

Alexandria, VA
April 30, 2015

T. S. Ellis, III
United States District Judge

17